UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | CASE NO. CR-07-00011 MMM |
| Plaintiff, ) ) | ORDER GRANTING DEFENDANTS' |
| ) | MOTION FOR RECONSIDERATION IN |
| vs. ) | PART AND DENYING DEFENDANTS' |
| ) | MOTION FOR A STAY |
| GABRIEL MENDEZ ) | |
| ) | |
| Defendant. ) | |
| ) | |

On February 4, 2008, defendant Gabriel Mendez filed a motion for reconsideration of an August 27, 2007 order denying his request that the government be directed to provide a list of its potential witnesses at trial. Mendez asked that the court reconsider its ruling in light of the fact that the Ninth Circuit had recently vacated its opinion in *United States v. W.R. Grace*, 493 F.3d 1119 (9th Cir. 2007) ("*Grace I*").[1] The government opposed the motion on February 26, 2008. Because of the pending decision in *Grace*, the court withheld ruling on the motion. On May 15, 2008, an en banc panel of the Ninth Circuit issued a decision in *Grace*, which held, in part, that district courts have authority to order the government to produce a witness list to defendants before trial. See generally *United States v. W.R. Grace*, 526 F.3d 499 (9th Cir. 2008) ("*Grace II*"). On May 19, 2008, Mendez filed a renewed motion for reconsideration in light of *Grace*. He seeks (1) an order directing the government to disclose its final

---

[1]On February 4, 2008, Mendez's co-defendant Pablo Bonifacio joined the motion for reconsideration. Bonifacio has since entered a plea agreement and is no longer a defendant in the case.

1  witness list and (2) an order directing the government to allow defendants to depose the two minor
2  victims. The court had denied both requests in its August 27, 2007 order.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The seven counts in the second superseding indictment that name Mendez charge conspiracy (18 U.S.C. § 317); sex trafficking of children by force, fraud, and coercion (18 U.S.C. § 1591(a)(1)); importation and harboring of aliens for purposes of prostitution (8 U.S.C. § 1328); harboring of illegal aliens (8 U.S.C. § 1324(a)(1)(A)(iii)); and aiding and abetting (18 U.S.C. § 2).

On July 9, 2007, Mendez filed a motion to compel (1) production of the government's witness list; (2) production of grand jury testimony; and (3) depositions of the two minor victims. On August 27, 2007, the court denied Mendez's motion in its entirety. As respects Mendez's motion to compel production of the government's witness list, the court found that it did not have authority to issue such an order under *United States v. Hicks*, 103 F.3d 837 (9th Cir. 1996), and *Grace I*. The court noted that the government had already disclosed the names of all potential witnesses, together with those witnesses' statements, and found Mendez's claim that he would be unable to obtain a fair trial unless the witness list was disclosed "overstated."[2]

## II. DISCUSSION

### A. Standard Governing Motions for Reconsideration in Criminal Matters

Although the Federal Rules of Criminal Procedure do not expressly authorize the filing of motions for reconsideration, "numerous circuit courts have held that motions for reconsideration may be filed in criminal cases." *United States v. Hector*, 368 F.Supp.2d 1060, 1063 (C.D. Cal. 2005), rev'd on other grounds, 474 F.3d 1150 (9th Cir. 2007). See *United States v. Fiorelli*, 337 F.3d 282, 288 (3d Cir. 2003) ("As noted by the Second and Ninth Circuits, motions for reconsideration may be filed in criminal cases"); *United States v. Clark*, 984 F.2d 31, 33-34 (2d Cir. 1993) (noting that courts have

---

[2] See Order Denying Defendant's Motion for Pretrial Discovery, Docket No. 173 (Aug. 27, 2007) ("August Order") at 6.

treated motions for reconsideration in criminal cases as the equivalent of a Rule 59(e) or 60(b) motion); see also *United States v. Martin*, 226 F.3d 1042, 1047 n. 7 (9th Cir. 2000) ("As the Second Circuit noted in *United States v. Clark*, post-judgment motions for reconsideration may be filed in criminal cases").

Courts have held that motions for reconsideration in criminal cases are governed by the rules that govern equivalent motions in civil proceedings. See *Hector*, 368 F.Supp.2d at 1063 (noting circuit precedent suggesting that motions for reconsideration in criminal cases should be addressed under the standard set forth in Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure); see also *Fiorelli*, 337 F.3d at 286 (addressing a motion for reconsideration of a ruling on a § 2255 petition as a motion "under Civil Rules 59 and 60"). The court will thus evaluate Mendez's motion under the standards applied to reconsideration motions in civil cases.

    **1.**    **Legal Standard Governing Motions for Reconsideration under the Federal Rules of Civil Procedure**

Rule 60(b) provides that a court may relieve a party from the effect of a judgment or order "for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; . . . or (6) any other reason that justifies relief." FED.R.CIV.PROC. 60(b).

A motion seeking such relief is addressed to the sound discretion of the district court. See *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986); *Matter of Emergency Beacon Corp.*, 666 F.2d 754, 750 (2d Cir. 1981).

### 2. Legal Standard Governing Motion for Reconsideration under Local Rule 7-18

In this district, motions for reconsideration are governed by Local Rule 7-18, which states: "A motion for reconsideration of the decision on any motion may be made only on the grounds of (a) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or (b) the emergence of new material facts or a change of law occurring after the time of such decision, or (c) a manifest showing of a failure to consider material facts presented to the Court before such decision." CA CD L.R. 7-18.

Whether to grant a motion for reconsideration under Local Rule 7-18 is a matter within the court's discretion. *Navajo Nation v. Confederated Tribes and Bands of the Yakama Indian Nation*, 331 F.3d 1041, 1046 (9th Cir. 2003).

## B. Standards Governing Pretrial Disclosure of Evidence in Criminal Cases

### 1. Rule 16(a)

Rule 16 grants a criminal defendant the right to discover certain types of information before trial. FED.R.CRIM.PROC. 16(a)(1)(A)-(E). To obtain discovery under Rule 16, a defendant must make a prima facie showing of materiality. *United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990) (citing *United States v. Little*, 753 F.2d 1420, 1445 (9th Cir. 1984)); see also *United States v. Zone*, 403 F.3d 1101, 1107 (9th Cir. 2005). Evidence is material under Rule 16 if it is "relevant to the development of a possible defense," *Mandel*, 914 F.2d at 1219 (citation and internal quotations omitted), or if it will "enable the accused to substantially alter the quantum of proof in his favor," *United States v. Marshall*, 532 F.2d 1279, 1285 (9th Cir. 1976).

### 2. *Brady*, *Giglio*, and the Jencks Act

In addition to its statutory duty to disclose material evidence under Rule 16, the government has a constitutional duty to disclose, upon request, all evidence favorable to a defendant that is "material either to guilt or to punishment." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). This obligation extends to information that could be used to impeach government witnesses. See *Giglio v.*

*United States*, 405 U.S. 150, 154 (1972) ("When the 'reliability of a given witness may well be determinative of guilt or innocence,' nondisclosure of evidence affecting credibility falls within [the *Brady*] rule" (citation omitted)).

The right to discovery under *Brady* and *Giglio* overlaps with the right to discovery under Rule 16, but is not identical. Courts have distinguished between evidence that is exculpatory, and thus discoverable under *Brady*, and evidence that is material and thus discoverable under Rule 16. See *United States v. Messerlian*, 832 F.2d 778, 795 (3d Cir. 1987) ("Under Rule 16(a)(1)(D), the information that the government must disclose need not be exculpatory; it merely must be material to the preparation of the defense"), cert. denied, 485 U.S. 988 (1988); *United States v. Beasley*, 576 F.2d 626, 630 (5th Cir. 1978) ("*Brady* is not a discovery rule, but a rule of fairness and minimum prosecutorial obligation"), cert. denied, 440 U.S. 947 (1979); *United States v. Kaplan*, 554 F.2d 577, 579-80 (3d Cir. 1977) ("Where documentary evidence is exculpatory, it may be within both *Brady* and Rule 16, but nonexculpatory records are obtainable in advance of trial only by virtue of Rule 16").

The Jencks Act requires that the government produce a witness's statements to a defendant after the witness has testified. As respects pretrial discovery, it states that "[i]n any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case." 18 U.S.C. § 3500(a); see *United States v. Taylor*, 802 F.2d 1108, 1118 (9th Cir. 1986) (the Jencks Act "limits compulsory pretrial discovery of statements made by prospective government witnesses and makes them unavailable until such witnesses have testified at trial"); see also *United States v. Hanna*, 55 F.3d 1456, 1459 (9th Cir. 1995) ("Hanna's only request for the production of Jencks Act materials was made in a pretrial motion for discovery. Hanna did not move for the production of grand jury testimony or other witness statements after any of the government witnesses testified. Because Hanna failed to 'tender to the Court the question of [Sargeant Crenshaw's statements or prior testimony] at a time when it [was] possible for the Court to order it produced,' he may not claim, on appeal, that the failure to produce any such material violated the Jencks Act"); *United States v. Barker*, 988 F.2d 77, 79 (9th Cir. 1993) ("[T]he Jencks Act requires only that a

witness' statement be 'subject to . . . discovery following the witness' testimony on direct examination'"). Because Mendez seeks discovery before trial, the Jencks Act provides no authority for the court to order production of the information he seeks. See *Hanna*, 55 F.3d at 1459.

    **C.**    **Production of the Government's Witness List**

        **1.**    **The Effect of *Grace II***

            **a.**    **The District Court's Power to Order Disclosure**

Mendez argues that the court should reconsider its earlier decision declining to compel the exchange of witness lists because there has been an intervening change in the law. In deciding Mendez's original motion to compel, the court concluded that it was bound by the Ninth Circuit's decisions in *Hicks* and *Grace I*, and that it had no discretion to order disclosure of the government's witness list. In *Grace I*, issued July 12, 2007, a three judge panel of the Ninth Circuit held that district courts have no authority to order the exchange of witness lists in a criminal case. See *Grace I*, 493 F.3d at 1128. As noted, on May 15, 2008, the Ninth Circuit reversed *Grace I* in an en banc decision, holding that "the district court ha[s] authority to order and enforce the pretrial disclosures of government witnesses." *Grace II*, 526 F.3d at 516.

As support for this conclusion, the *Grace II* court cited "the principle that the district court is charged with effectuating the speedy and orderly administration of justice," *id.* at 508, and noted that

> "[t]here is universal acceptance in the federal courts that, in carrying out this mandate, a district court has the authority to enter pretrial case management and discovery orders designed to ensure that the relevant issues to be tried are identified, that the parties have an opportunity to engage in appropriate discovery and that the parties are adequately and timely prepared so that the trial can proceed efficiently and intelligibly." *Id.* at 508-09.

The district court had ordered that the government produce a "finalized list of witnesses" by September 30, 2005 in advance of a complex conspiracy trial set to begin on September 11, 2006. When the government filed a list in September 2005, it sought unilaterally to reserve the right to update its witnesses and exhibits through the close of evidence at trial. The district court rejected this unilateral reservation and precluded the government from calling witnesses not disclosed by the

September 2005 deadline. See *id.* at 509.  Although the *Grace I* court held that the district court had abused its discretion by ordering the government to produce a final witness list and precluding witnesses not on that list from testifying, the *Grace II* court held that the "pretrial order and the enforcement orders fit comfortably within the court's authority under Federal Rules of Criminal Procedure 2 and 16, and its more general inherent authority to manage its docket." *Id.*[3] Thus, the court overruled *Hicks* (and *Grace I*) insofar as they held that "a district court has no authority to order the government to produce a pretrial witness list beyond that specified in Rule 16." *Id.* at 511.[4] *Grace II* thus announced a change in the law that is directly relevant to the outcome of defendant's original motion.  Such a significant intervening change provides sufficient grounds to justify reconsideration

---

[3]The Ninth Circuit noted that other circuits had recognized the district court's power to make and enforce orders requiring disclosure of government witnesses. See *Grace II*, 526 F.3d at 509 ("Other circuits that have addressed a district court's authority to require the government to disclose its witness list in advance of trial have agreed that the court may do so," citing *United States v. Cannone*, 528 F.2d 296, 299 (2d Cir. 1975)). The Ninth Circuit noted that other circuits had justified vesting this authority in the district court by citing (1) the courts' inherent power to ensure the orderly administration of justice; (2) a proper exercise of the courts' discretion; or (3) Rules 16 and 2. See *id.* at 509-10 (citing cases). Analyzing these various sources of authority, the court held that "[a]lthough Rule 16 does not expressly mandate the disclosure of *nonexpert* witnesses, it is not inconsistent with Rule 16 and Rule 2 for a court to order the government to produce a list of such witnesses as a matter of its discretion." *Id.* at 510 (citing *United States v. Fletcher*, 74 F.3d 49, 54 (4th Cir. 1996)); see *id.* at 511-12 ("We do not, however, have to resolve whether Rule 16 alone or in combination with Rule 2 provides sufficient authority for the district court's orders regarding nonexpert witnesses. At the very least these rules do not preclude such orders. Further, they reinforce the logic and fairness of requiring the government to produce a pretrial witness list of both experts and nonexperts (subject to appropriate conditions) so that the parties – and the district court – may be adequately prepared for trial").

[4]In *Hicks*, the court relied on the fact that Congress had rejected a proposed amendment to Rule 16 that would have required both parties to disclose witness lists before trial and inferred that Congress intended to restrict the authority of a district court to order any pretrial witness disclosure. See *id.* at 512 ("*Hicks* relied on Congress' rejection in 1975 of a proposed amendment to Rule 16 that would have required both the government and the defense to disclose their witnesses before trial. We inferred from this rejection that Congress intended to deny a district court any authority to order any pretrial witness disclosure other than that expressly provided under Rule 16"). The court explained that the inferences the *Hicks* court drew from the legislative history of Rule 16 were overly broad. See *id.* at 512 ("There was no suggestion that Congress intended to bar district courts from exercising their discretionary authority to order pretrial discovery and disclosures from the government under terms and conditions that courts normally use to manage the fair and efficient conduct of trials. Rather, Congress was concerned that a mandatory disclosure rule would discourage government witnesses from testifying and lead to witness intimidation").

7

of the previous decision. See *School Dist. No. 1J, Multnomah County Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) ("Reconsideration is appropriate . . . if there is an intervening change in the law").

### b. When Disclosure is Appropriate

The government acknowledges that *Grace II* gives the court discretionary authority to order disclosure of its witness list prior to trial and to preclude witnesses not disclosed from testifying.[5] It argues, however, that Mendez has not made an adequate showing that early disclosure is justified in this case. The government contends that it has "identified fewer than twenty potential witnesses who are currently located in Guatemala," and that the names of all of its potential witnesses have been produced in discovery.[6] In his original motion, Mendez argued that, because many of the government's witnesses are likely Guatemalan, and because it will be difficult for him to conduct an adequate investigation and prepare a defense without knowing their identities, the court should order the government to reveal the witnesses during pretrial proceedings.

To analyze whether the court should exercise its discretion to order disclosure in this case, it is instructive to consider the facts of *Grace II*. There, the district court ordered in March 2005 that the government provide a final witness list in September 2005, a year before trial. *Id.* at 513. The conspiracy charged in *Grace II* was complex. It reached back nearly 30 years and the government proposed to call more than 200 witnesses; millions of pages of documents have been produced in discovery. *Id.* at 514. According to the Ninth Circuit, the district court "believed that the deadline would bring the necessary focus and organization to ready the case for trial." *Id.* This conclusion was bolstered by the fact that the government had originally suggested that the trial occur in September

---

[5]Government's Opposition to Defendant's Motion for Reconsideration ("Govt.'s Opp.") at 1. The Ninth Circuit explicitly addressed, and rejected, the argument raised previously by the government that it would violate separation of powers to preclude the government from presenting late-discovered witnesses at trial. The government earlier argued that the court's intention to set a discovery cut-off date and enforce it by precluding the government from introducing evidence not disclosed by that date was unlawful. The *Grace II* court held that if the district court issues a "specific discovery order," it may, "if it is violated, . . . exclude evidence as a sanction." *Grace II*, 526 F.3d at 516.

[6]Govt.'s Opp. at 5.

8

*2005*, thereby communicating an ability to prepare the case within that time.[7] The Ninth Circuit held that "[g]iven the size and complexity of the case and the government's acquiescence in the dates for final witness and document disclosures, the district court's March 2005 order was reasonable and not an abuse of discretion." *Id.*

There is no discussion in *Grace II* as to whether a defendant must show good cause to compel the government's disclosure of its witnesses, or, if so, what the nature of that showing should be. Rather, *Grace II* suggests that whether to order disclosure is a matter left to the court's discretion, which it should exercise with reference to principles of judicial economy and litigation management. Thus, if the court finds that ordering the government to disclose its final witness list before trial will focus and organize the litigation, it has authority to make such an order under *Grace II*.

The facts here are analogous to those in *Grace II*. As there, defendants here are charged with participating in a wide-ranging, complex conspiracy. The alleged conspiracy spans international borders and involves multiple defendants and multiple alleged victims. Mendez asserts the government has identified at least 273 potential witnesses,[8] and that there is a risk it will continue to add witnesses if not ordered to finalize its list at some point prior to trial. Defendants as a group have represented that they have had difficulty identifying potential witnesses based on the government's disclosures to date, and also that the necessity of traveling to Guatemala to interview witnesses has posed logistical difficulties. All of these factors combine to suggest that the case is "complex" and that it "poses special challenges to the parties in preparing for trial and to the court in managing the litigation." *Id*. Additionally, as in *Grace II*, the government indicated that it would be prepared to try the case in February 2008. These similarities strongly suggest that the court can properly exercise its discretion to order disclosure of the government's witness list.

The government's central argument is that it has already identified all of its potential witnesses in discovery and that it is only defendants' inattention that prevents them from having divined who will

---

[7] The court also noted that the government had not originally objected to the discovery order, and that the district court applied the order flexibly, extending the deadline to December 5, 2005 at the government's request. See *id*. at 12 & n. 12.

[8] Defendants' Reply to Opposition to Motion for Reconsideration ("Def.'s Reply) at 3.

be called at trial. This argument has two flaws. First, if it is true that the government has identified all of the potential witnesses in discovery, it will suffer no prejudice by giving the defense a definitive witness list. Indeed, as the identity of the witnesses is not secret, it appears that the government seeks merely to gain a litigation advantage by resisting production of a witness list. Permitting it to do so, however, risks inconveniencing the jury and delaying completion of the trial. If defendants guess wrong about the witnesses to be called, they will undoubtedly request a continuance during trial to investigate the individuals they did not previously identify as likely witnesses. This is precisely the type of judicial economy/litigation management issue that the court has discretion to consider under *Grace II*.

Second, one of the primary reasons for the court to order that the government disclose its witnesses before trial is to manage and focus the litigation so that all parties have adequate time to prepare and construct their cases. Given the number of potential witnesses and the location of many of these witnesses abroad, the fact that the government has disclosed the universe of possible witnesses does not accomplish this goal. Only by setting a deadline for disclosure of the government's actual witnesses and enforcing that deadline can the court ensure that the government will organize and focus its case sufficiently in advance of trial that defendants will have adequate time to seek out government witnesses before trial, and prepare to meet the government's evidence.

The court thus concludes that this case, which the government designated complex, poses unique challenges "to the parties in preparing for trial and to the court in managing the litigation." *Id.* As a result, it is necessary and appropriate to order that the government produce a final witness list before trial. Trial is set to begin on September 2, 2008. The court is setting a discovery cutoff in this case of August 4, 2008. The court hereby orders that the government disclose its final witness list by the discovery cut-off date, **August 4, 2008.**[9] Any witnesses not disclosed will be precluded from testifying at trial.[10]

---

[9] This affords the government adequate time to organize its evidence for trial, while affording defendants sufficient time to conduct additional investigation if necessary.

[10] The witness list must contain sufficient information to permit defendants to identify and locate the witnesses. The court also sets general discovery cut-off dates as follows:

### D.     The Depositions of the Minor Victims

In his renewed motion for reconsideration, Mendez asks that the court also reconsider its decision not to allow him to depose two of the minor victims. Mendez argues that *Grace II* should be read broadly as granting the court wide discretion to oversee all pretrial discovery. He notes that the Ninth Circuit held that "nothing in Rule 16 expressly prohibits the district court from ordering additional pretrial discovery or disclosures that will also further the objectives set forth in Rule 2." *Id.* at 511.

Depositions in criminal cases are governed by Rule 15. Generally, pretrial depositions of witnesses in criminal proceedings "are not allowed merely for discovery purposes." *United States v. Fei Ye*, 436 F.3d 1117, 1123 (citing *United States v. Rich*, 580 F.2d 929, 933-34 (9th Cir. 1978)); see *id.* ("Rule 15 'contemplates a party taking depositions only of his own witness,' and 'only if the witness is unable to attend trial,'" quoting *United States v. Cutler*, 806 F.2d 933, 936 (9th Cir. 1986)). This was the law on which the court relied in its August order. While it is undoubtedly true that *Grace II* broadened the court's discretionary powers to supervise pretrial discovery in criminal cases, it did so with reference to Rule 16. Nothing in the decision mentions *Fei Ye* or the prohibition against depositions of the opposing party's witnesses under Rule 15. Defendant has not demonstrated that he is entitled to depose the minor victims under Rule 15, and the court does not believe that *Grace II* constituted an invitation to district courts to ignore that rule.

---

| | |
|---|---|
| Government's Expert Disclosure (Rule 16(a)(1)(G)): | July 14, 2008 |
| Defendants' Expert Disclosure (Rule 16(b)(1)(C)): | July 28, 2008 |
| Deadline for All Parties' Discovery (including designation of supplemental/rebuttal experts): | August 4, 2008 |

These deadlines apply not only to the government's discovery obligations but also to defendants' reciprocal discovery obligations. Rule 16(b) of the Federal Rules of Criminal Procedure requires that defendants provide reciprocal disclosure of certain materials if they have requested and received the same information from the government and the government makes an appropriate request. See FED.R.CRIM.PROC. 16(b)(1); *United States v. Fort*, 478 F.3d 1099, 1102 (9th Cir. 2007) ("Once a defendant makes a Rule 16 discovery request and the government complies, the government is entitled to seek reciprocal discovery from the defendant"). This includes production of a written summary of any expert testimony they intend to use at trial. FED.R.CRIM.PROC. 16(b)(1)(C).

Because Mendez has not shown a change in the law or other circumstances sufficient to justify reconsideration of the court's August order regarding depositions of the minor victims, the court declines to reconsider this aspect of its order.

### III. CONCLUSION

For the reasons stated, the court grants defendant's motion for reconsideration of his request that the court order the government to product a final witness list prior to trial. The court directs the government to produce such a list on or before August 4, 2008. The court denies defendant's motion for reconsideration of its earlier order regarding depositions of the minor victims.

The court also sets the following discovery cut-off dates:

| | |
|---|---|
| Government's Expert Disclosure (Rule 16(a)(1)(G)): | July 14, 2008 |
| Defendants' Expert Disclosure (Rule 16(b)(1)(C)): | July 28, 2008 |
| Deadline for All Parties' Exchange of Discovery (including designation of supplemental/rebuttal experts): | August 4, 2008 |

These dates govern the government's production of discovery to defendants, and defendants' provision of reciprocal discovery under Rule 16.

DATED: June 25, 2008

_Margaret M. Morrow_
MARGARET M. MORROW
UNITED STATES DISTRICT JUDGE