UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. CR-07-00011(A)-MMM |
| Plaintiff, | ) | |
| vs. | ) ) ) | ORDER DENYING DEFENDANT GABRIEL MENDEZ'S MOTION TO SEVER |
| GABRIEL MENDEZ | ) | |
| Defendants. | ) ) ) | |

The government initiated this criminal action on December 18, 2006 charging multiple defendants in a wide ranging sex-trafficking conspiracy. On August 8, 2007, the government filed a 50-count Second Superseding indictment that alleged a single overarching conspiracy among all defendants, and 49 substantive counts against individual defendants or groups of defendants. Defendant Gabriel Mendez is one of nine remaining co-defendants. He is charged with conspiracy in Count One of the indictment and in six of the remaining substantive counts (Counts 15, 16, 28, 29, 42, and 43).

## I. FACTUAL BACKGROUND

Count One alleges that beginning on an unknown date, and continuing to on or about December 20, 2006, all defendants "conspired and agreed with each other to":

(1) import female aliens into the United States from Guatemala for the purpose of prostitution and harbor them here for that purpose in violation of 8 U.S.C. § 1328; and

(2) "recruit, entice, harbor, transport, provide, and obtain by any means young females, knowing that force, fraud and coercion would be used to cause the young females to engage in commercial sex acts, and knowing that some of the females had not attained the age of 18 years and would be caused to engage in commercial sex acts in violation of [8 U.S.C. § 1591(a)(1)]."[1]

The indictment alleges that defendants intended to accomplish the object of their conspiracy by recruiting young females from Guatemala and arranging for them to be smuggled into Los Angeles. Once in Los Angeles, they were brought to residences and harbored.[2] The young females were then forced to work as prostitutes to repay their smuggling debts.[3] The government asserts that the co-defendants solicited prostitution customers and rented rooms in various locations; they then brought the young females to the customers.[4] Defendants purportedly collected money from the customers and monitored and guarded the young females at all times to prevent them from escaping.[5] To dissuade the young females from escaping, defendants allegedly threatened that they would find and harm them or their families in Guatemala; they threatened the young females with various forms of witchcraft.[6]

The remaining counts of the indictment allege substantive acts purportedly committed by one or a group of individual defendants. Counts 2-17 allege sex trafficking of minors by force, fraud, and coercion in violation of 18 U.S.C. § 1591(a)(1). Counts 18-22 allege transportation of minors

---

[1] Second Superseding Indictment, Count One, ¶ A.

[2] *Id.*, Count One, ¶ B (1), (3).

[3] *Id.*, Count One, ¶ B(4).

[4] *Id.*, Count One, ¶ B(5-6).

[5] *Id.*, Count One, ¶ B(9), (11).

[6] *Id.*, Count One, ¶ B(13-15).

2

for purposes of prostitution in violation of 18 U.S.C. § 2423(a). Counts 23-43 allege the importation and harboring of aliens for purposes of prostitution in violation of 8 U.S.C. § 1328. Counts 35-47 allege the harboring of illegal aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(iii). Finally, counts 48-50 allege the transportation of illegal aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(ii).

The indictment identifies twelve victims of the conspiracy. Mendez is charged with the conspiracy as it relates to all twelve victims and with specific illegal conduct relative to Minor Females #2 and #3.

## II. DISCUSSION

### A. Improper Joinder

#### 1. Legal Standard Governing Improper Joinder Under Rule 8

Mendez contends that he was improperly joined with the other defendants in the second superseding indictment. The joinder of two or more defendants in the same indictment is governed by Rule 8(b) of the Federal Rules of Criminal Procedure. That rule provides, in relevant part,

> "The indictment or information may charge two or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count." FED.R.CRIM.PROC. 8(b).

A claim of misjoinder of defendants under Rule 8(b) is a question of law to be decided by the court. *United States v. Sarkisian*, 197 F.3d 966, 975 (9th Cir. 1999) (citing *United States v. Vasquez-Velasco*, 15 F.3d 833, 843 (9th Cir. 1994)).

In determining whether joinder is proper under Rule 8(b), the Ninth Circuit has focused on the phrase "same series of acts or transactions constituting an offense or offenses." *Sarkisian*, 197 F.3d at 975 ("'Under this rule, when multiple defendants are involved, joinder is improper unless all offenses arise out of the same series of acts or transactions,'" quoting *United States v. Martin*, 567 F.2d 849, 853 (9th Cir. 1977)). "The term 'transaction' is interpreted flexibly, and whether a 'series' exists depends on whether there is a 'logical relationship' between the transactions." *Vasquez-Velasco*, 15 F.3d at 843

3

(citing *United States v. Felix-Gutierrez*, 940 F.2d 1200, 1208 (9th Cir. 1991)); see *Sarkisian*, 197 F.3d at 975 ("In determining whether two or more offenses are part of the 'same series of acts or transactions constituting an offense,' the court looks for a 'logical relationship' between the offenses"); *United States v. Ford*, 632 F.2d 1354, 1372 (9th Cir. 1981) (same).

A logical relationship is typically shown "by the existence of a common plan, scheme, or conspiracy." *Felix-Gutierrez*, 940 F.2d at 1208. Mere factual similarity between the events is not a sufficient basis for joinder. *Vasquez-Velasco*, 15 F.3d at 843; *Ford*, 632 F.2d at 1372. Nor is joinder justified merely by a showing that the events occurred at about the same time or that the acts violated the same statute. *Vasquez-Velasco*, 15 F.3d at 843; *United States v. Satterfield*, 548 F.2d 1341, 1344 (9th Cir. 1977). "'Rule 8(b) is construed liberally in favor of joinder.'" *Sarkisian*, 197 F.3d at 975 (quoting *United States v. Baker*, 10 F.3d 1374, 1387 (9th Cir. 1993), cert. denied, 513 U.S. 934 (1994)); accord *United States v. Portac, Inc.*, 869 F.2d 1288, 1294 (9th Cir. 1989).

### 2. Whether Mendez Was Improperly Joined

Mendez argues that he was improperly joined because (1) the indictment alleges multiple conspiracies and crimes and (2) he is not alleged to have participated in most of the charged offenses and conspiracies.[7] Mendez notes that he is not charged in 43 of the indictment's 50 counts; as a consequence he argues, the offenses charged do not arise out of the same series of acts or transactions. Rather, Mendez suggests, "they are simply similar alleged wrongful acts."[8]

Mendez's argument could be read as an assertion that he was improperly charged with conspiracy.[9] In determining the validity of joinder under Rule 8(b), the court's analysis is limited to the allegations set forth in the indictment. *United States v. Rousseau*, 257 F.3d 925, 931 (9th Cir. 2001) ("In determining whether joinder is proper, the district court should examine only those allegations in the indictment," citing *United States v. VonWillie*, 59 F.3d 922, 929 (9th Cir. 1995)); see *United States v.*

---

[7] Defendant Mendez's Memorandum of Points and Authorities in Support of Motion to Sever ("Def.'s Mem.") at 2.

[8] *Id.* at 5.

[9] See *id.* ("[T]here is no allegation that Mendez actually conspired with any of the other eight defendants with the exception of his companion Miriam").

4

*Terry*, 911 F.2d 272, 276 (9th Cir. 1990) ("Because Rule 8 is concerned with the propriety of joining offenses in the indictment, the validity of the joinder is determined solely by the allegations in the indictment").

Count One of the second superseding indictment alleges that all defendants participated in a sex trafficking conspiracy. It specifically pleads that Mendez, together with other defendants, (1) picked up newly smuggled young females and transported them to their residences in Los Angeles;[10] (2) forced young females to work as prostitutes;[11] (3) transported the young females to solicit customers for prostitution;[12] (4) arranged for rooms to be used for purposes of prostitution;[13] (5) collected money from customers;[14] (6) instructed the young females to claim falsely that they were over 18 years old;[15] (7) monitored and guarded the young females at all times to prevent their escape;[16] (8) threatened the young females and their families;[17] and (9) physically restrained the young females to prevent them from escaping.[18]

The indictment thus links Mendez to acts purportedly taken in furtherance of the conspiracy. As concerns Minor Females #1 and #2, the indictment links Mendez to co-defendants Miriam, Gladys and Maribel,[19] and in this fashion asserts that he with his co-defendants was part of a broader plan to import, harbor, and force young female victims into prostitution. The government bears the burden at

---

[10] Second Superseding Indictment, Count One, ¶ B(3).

[11] *Id.*, Count One, ¶ B(4).

[12] *Id.*, Count One, ¶ B(5).

[13] *Id.*, Count One, ¶ B(6).

[14] *Id.*, Count One, ¶ B(9).

[15] *Id.*, Count One, ¶ B(10).

[16] *Id.*, Count One, ¶ B(11).

[17] *Id.*, Count One, ¶ B(13).

[18] *Id.*, Count One, ¶ B(15).

[19] See *id.*, Count One, ¶ C(7-25).

1  trial of proving that Mendez was indeed a member of conspiracy. That burden notwithstanding, the
2  court cannot conclude from the face of the indictment that it does not adequately charge Mendez with
3  conspiracy.

4  Mendez also contends that the charges against him are insufficiently related to the charges
5  against his co-defendants to merit joinder. The Ninth Circuit has generally held that allegations of a
6  "common plan" or conspiracy are sufficient to justify joinder of defendants under Rule 8(b). See *United*
7  *States v. Velasquez*, 772 F.2d 1348, 1353 (7th Cir. 1985) ("The usual meaning of ['same series of acts
8  or transactions'] is acts or transactions that are pursuant to a common plan or common scheme, which
9  is to say (in the usual case) that the acts or transactions are part of a single conspiracy" (citations
10 omitted)); *United States v. Kaiser*, 660 F.2d 724, 733 (9th Cir. 1981) ("A conspiracy count can serve
11 to link defendants in an indictment," citing *United States v. Valenzuela*, 596 F.2d 824, 829 (9th Cir.
12 1979)); see also *Ford*, 632 F.2d at 1372 (holding that the separate acts of the defendants "were all part
13 of an ongoing scheme to enrich the trustees at the expense of the trusts sufficient to constitute a series
14 of acts or transactions within the meaning of Rule 8(b). The various trustee actions formed a consistent
15 pattern: trustee discussion and enactment of plans or policies contrary to law, trust documents, and/or
16 fiduciary duties, which were financially lucrative to the trustees themselves. That the acts or
17 transactions were spread over a period of years does not mean that there was no series"); *United States*
18 *v. Maranghi*, 718 F.Supp. 1450, 1452 (N.D. Cal. 1989) ("[T]he Ninth Circuit has also used [a] . . .
19 joinder test . . . which abstracts from the evidence to characterize the offenses in terms of a 'common
20 scheme'"). Thus, it has held that defendants are properly joined where they are alleged to have been
21 involved in an "umbrella" enterprise or operation. See *Felix-Gutierrez*, 940 F.2d at 1208-09 ("All of
22 the charges in this case were overlapping and logically interrelated. The indictment alleged that
23 Verdugo, Lopez, and Felix were members of an international narcotics enterprise and that as part of that
24 enterprise, Verdugo and Lopez allegedly participated in the kidnaping and murder of Camarena, along
25 with Caro-Quintero"); see also *Sarkisian*, 197 F.3d at 976 ("We hold that the district court erred in
26 joining the extortion and car counts because there is not a sufficient logical relationship between them.
27 This is not an instance where one criminal activity naturally flows from separate criminal conduct. . .
28 . Nor is this an instance where all the criminal activities logically fall under the umbrella of one big

conspiracy").

As the government notes, all of the alleged acts charged in the indictment relate directly to the overarching sex trafficking conspiracy. Indeed, it appears that Mendez recognizes this fact because he seeks to avoid the full effect of the prevailing rule by suggesting that the indictment alleges *separate* conspiracies. This reading of the indictment is at odds with the plain language of Count One, which is the only count alleging a conspiracy, and which clearly names each and every co-defendant. The indictment alleges that the substantive crimes and overt acts listed therein arose out of a single conspiracy in which all defendants participated.[20] To the extent individual defendants are charged with different substantive counts, "the charging of a conspiracy count linking together substantive counts against defendants usually satisfies Rule 8(b)'s requirements unless conspiracy is alleged in bad faith merely to sidestep the requirements of Rule 8(b)." *United States v. Moore*, 880 F.2d 416, 1989 WL 80494, *7 (9th Cir. 1989) (Unpub. Disp.) (citing *Valenzuela*, 596 F.2d at 829). Because Count One links together the substantive counts, and because Mendez has not suggested that the conspiracy was alleged in bad faith, the court concludes that the requirements of Rule 8(b) are met in this case.[21]

---

[20] It is, of course, the government's responsibility to prove beyond a reasonable doubt at trial that defendants indeed participated in a single conspiracy.

[21] Mendez cites a number of cases that he argues cut against this conclusion. The cases are distinguishable. Mendez relies heavily on *United States v. Martin*, 567 F.2d 849 (9th Cir. 1977). There, the indictment alleged several separate conspiracies. Although Martin was charged in some of the conspiracies, he was not "alleged to have participated in any of the conspiracies alleged in counts VI, VII, IX, and X." *Id.* at 853. Not only was Martin not charged in the conspiracies but "significant evidence was presented relating to the[m]." *Id.* Although the court noted that the question was "a close one," it concluded that joinder was improper. *Id. Martin* is distinguishable in that there were separate conspiracies alleged in that case, while here there is only one. All of the substantive charges relate to the single conspiracy charged, while in *Martin*, a significant portion of the evidence concerned charges not directed against Martin.

Mendez also cites *Satterfield* and *Maranghi* for the proposition that, when a majority of the evidence presented at trial will be irrelevant to the charges against a defendant, severance is appropriate. These cases are also inapposite. In *Satterfield*, two defendants were joined in a single indictment that alleged bank robberies; some of the robberies were committed by one defendant alone, and others by both. The indictment did not allege that all of the robberies arose out of a common plan, nor did it charge defendants with conspiracy. See *Satterfield*, 548 F.2d at 1344. As a result, the rule that a conspiracy charge presumptively satisfies Rule 8(b) did not apply. Similarly, although a conspiracy was alleged in *Maranghi*, the court severed defendants who were charged only with substantive offenses, and were not charged in the conspiracy. See *Maranghi*, 718 F.Supp. at 1453-54.

**B.     Severance**

       **1.     Legal Standard Governing Severance Under Rule 14(a)**

Rule 14(a) of the Federal Rules of Criminal Procedure provides that, "[i]f the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." FED.R.CRIM.PROC. 14(a). Courts have recognized, however, that the public has a substantial interest in having defendants properly joined under Rule 8(b) of the Federal Rules of Criminal Procedure tried together. See, e.g., *United States v. Camacho*, 528 F.2d 464, 470 (9th Cir. 1976) ("Joint trials are the rule rather than the exception; and there is a substantial public interest in the joint trial of persons charged with committing the same offense or with being accessory to its commission" (internal quotation marks omitted)). Public interest favors joint trials because they "'conserve state funds, diminish inconvenience to witnesses and public authorities, and avoid delays in bringing those accused of crime to trial.'" *United States v. Lane*, 474 U.S. 438, 449 (1986) (quoting *Bruton v. United States*, 391 U.S. 123, 134 (1968)). A joint trial also helps to avoid "the scandal and inequity of inconsistent verdicts." *Zafiro v. United States*, 506 U.S. 534, 537 (1993) (quoting *Richardson v. Marsh*, 481 U.S. 200, 210 (1987)). The Ninth Circuit has observed that joint trial is "particularly appropriate where the co-defendants are charged with conspiracy, because the concern for judicial efficiency is less likely to be outweighed by possible prejudice to the defendants when much of the evidence would be admissible against each of them in separate trials." *United States v. Fernandez*, 388 F.3d 1199, 1242 (9th Cir. 2004).

As a result, district courts should sever defendants for trial only when joinder is "'so manifestly prejudicial that it outweighs the dominant concern with judicial economy.'" *United States v. Doe*, 655 F.2d 920, 926 (9th Cir. 1980) (quoting *United States v. Brashier*, 548 F.2d 1315, 1323 (9th Cir.1976)). It is not enough for a defendant to show that he would stand a better chance of acquittal in a separate

---

Mendez's citation of these cases is consistent with his assertion that he was not a co-conspirator and acted separately from his co-defendants. While this may support a not guilty verdict at trial, it does not constitute a basis for severing Mendez's trial, as the government has charged Mendez in the single conspiracy alleged in this case.

8

trial. *Zafiro*, 506 U.S. at 540. Instead, the following factors, *inter alia*, should be considered in evaluating the prejudicial effect of joinder:

> "(1) whether the jury may reasonably be expected to collate and appraise the individual evidence against each defendant;
>
> (2) the judge's diligence in instructing the jury on the limited purposes for which certain evidence may be used;
>
> (3) whether the nature of the evidence and the legal concepts involved are within the competence of the ordinary juror; and
>
> (4) whether [the defendant can] show, with some particularity, a risk that the joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Fernandez*, 388 F.3d at 1241.

The first two factors are particularly important to the severance inquiry. *Id.* "The judge's diligence in instructing the jury on the limited purposes for which evidence can be used is a 'critical factor' in assessing the jury's ability to compartmentalize the evidence against each defendant." *Baker*, 10 F.3d at 1387 (quoting *United States v. Cuozzo*, 962 F.2d 945, 949 (9th Cir. 1992)). Careful and frequent cautionary instructions can reduce or eliminate any prejudice that might otherwise result from a joint trial. See *United States v. Castro*, 887 F.2d 988, 998 (9th Cir. 1989); see also *Fernandez*, 388 F.3d at 1243.

A trial judge has wide discretion in deciding a motion to sever, and such decisions will seldom be overturned on appeal. *United States v. Ponce*, 51 F.3d 820, 831 (9th Cir. 1995); see also *United States v. Mariscal*, 939 F.2d 884, 886 (9th Cir. 1991) (noting that the scope of review of an order denying a severance is "extremely narrow").

### 2. Whether Mendez Should Be Severed For Trial

Mendez argues that he should be severed for trial because he will be prejudiced if tried with the other defendants. He contends (1) that a vast amount of the evidence that will be admitted at a joint trial would be inadmissible in a trial where he was the sole defendant; and (2) there is a wide disparity in

9

culpability between the co-defendants.[22]

Mendez fails to support his claim that "a vast amount" of the evidence that will be presented at a joint trial would be inadmissible in a severed trial. Joint trials are particularly appropriate in conspiracy cases because "much of the same evidence would be admissible against each [defendant] in separate trials." *Ferndandez*, 388 F.3d at 1242. This is true in part because evidence that tends to establish the existence and scope of the overall conspiracy is admissible against an individual defendant even if that defendant is not directly connected to the evidence. See *United States v. Crespo de Llano*, 838 F.2d 1006, 1018 (9th Cir. 1987) (evidence that was not connected to the defendant, "including $6,000 in cash, a mobile phone, paging equipment, and evidence of Dominguez-Peraza's cash purchases of vehicles and weapons[,] [was admissible because it was] probative of an overall narcotics trafficking conspiracy"); *United States v. Dessens-Finbres*, 988 F.2d 123, 1993 WL 51201, *14 (9th Cir. Feb. 26, 1993) (Unpub. Disp.) ("[L]ike the receipts for cash purchases in *Crespo De Llano*, these ticket receipts indicated activities in furtherance of an ongoing conspiracy"). Because Mendez is charged in the conspiracy, and may be liable for conspiracy even absent knowledge of some of the actions of his co-defendants, the government could present much of the evidence that would come in at a joint trial in any severed trial. Stated differently, "evidence relating to . . . incidents in which [Mendez] was not involved [will be] relevant to his case because it [will] show[ ] the nature of the scheme and how it was carried out." *United States v. Vaccaro*, 816 F.2d 443, 449 (9th Cir.1987).

Mendez's second assertion – that his co-defendants are more culpable than he – hinges in large part on his representation that he was merely a peripheral participant in the conspiracy and did not have any "involvement in the acts of [the] six co-defendants . . . who allegedly recruited and lied to the twelve purported victims in order to convince them to journey to the United States."[23] This misapprehends the nature of the conspiracy alleged in Count One. This argument appears to reprise Mendez's assertion that he was not a conspirator, and fails for the reasons articulated above. The

---

[22] Def.'s Mem. at 8.

[23] Def.'s Mem. at 9.

10

indictment asserts that Mendez was involved in many stages of the conspiracy.[24] If the government is able to prove that he is a conspirator, he will be liable for all of his co-conspirators' acts, regardless of his level of culpability.

Secondly, it is true that, as a general matter, "whether the jury may reasonably be expected to collate and appraise the individual evidence against each defendant" is key in determining whether a joint trial will be prejudicial. *Fernandez*, 388 F.3d at 1241; see *Zafiro*, 506 U.S. at 539 ("For example, evidence of a codefendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty. When many defendants are tried together in a complex case and they have markedly different degrees of culpability, this risk of prejudice is heightened"). Severance, however, is only one (and the most drastic) of many measures that the court can use to avoid the risk that a jury will fail to compartmentalize the evidence against multiple defendants. Indeed, the Supreme Court has stated that "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Zafiro*, 506 U.S. at 539 (citing *Richardson*, 481 U.S. at 211).

Even assuming Mendez is significantly less culpable than his co-defendants, he has failed to explain why this potential disparity cannot be addressed through carefully drafted and targeted jury instructions. For all of these reasons, the court finds that Mendez will not be unduly prejudiced

---

[24] The case is therefore distinguishable from *Donaway*, where the conspiracy charge was dismissed against Donaway prior to trial. See *Donaway*, 447 F.2d at 943 (noting that severance was appropriate where "the government's case in chief covered more than 2,300 pages of transcript. Less than 50 pages were relevant to Donaway. Most of the rest dealt with the other defendants and transactions involving the handling and 'doping' of horses, with which Donaway had no connection"); see also *Maranghi*, 718 F.Supp. at 1452 (granting severance where the defendant was "charged with the distribution of approximately one-half gram of cocaine on January 11, 1989," and explaining: "The evidence relevant to that one transaction will be dwarfed by that offered to prove the existence of an international drug conspiracy involving a dozen other defendants and an untold number of other deals – all irrelevant to the offense with which Ruffa has been actually charged, the only offense the government is willing to prove against him. The possibility for prejudice by association is enormous. During trial there would be an endless litany of admonitions as to whom each piece of evidence was admitted. The jury would be saddled with the hopeless task of segregating the facts. The same analysis applies in varying degrees to the other defendants charged with individuated offenses during discrete time periods").

by a joint trial, and it denies his motion to sever under Rule 14 as a result.[25]

### III. CONCLUSION

For the reasons stated, the court denies defendant Gabriel Mendez's motion to sever.

DATED: July 21, 2008

                                       /s/ Margaret M. Morrow
                                       MARGARET M. MORROW
                                       UNITED STATES DISTRICT JUDGE

---

[25] The court's conclusion on this point is supported by Ninth Circuit precedent. In *Fernandez*, for example, there were eleven co-defendants who were facing a "multiplicity of counts . . . alleging different conspiracies with different goals, as well as several predicate RICO or stand-alone VICAR offenses involving different sub-groups of the co-defendants." *Fernandez*, 388 F.3d at 1242. The court acknowledged that "the jury's ability to evaluate the evidence against each defendant individually was certainly put to the test," but ultimately held that the "joint trial did not affect the jury's ability to evaluate each defendant's culpability individually." *Id.* at 1242-43. Similarly, in *Patterson*, several co-conspirators who allegedly played a lesser role in a drug conspiracy (as street sellers, distributors, money collectors and lookouts) sought to have their trials severed from the trial of defendant Mitchell, who was the focal point of the charges. The Ninth Circuit held that the district court properly denied severance because all defendants were allegedly involved in a single conspiracy. See *Patterson*, 819 F.2d at 1501